IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 25-cr-0182 (JDW) |
| MICHAEL JEFFERSON | : | |

### GOVERNMENT'S CHANGE OF PLEA MEMORANDUM

**I.  BACKGROUND**

Defendant Michael Jefferson is charged in an indictment with four counts: aggravated sexual abuse in violation of 18 U.S.C § 2241(a) (Count One); sexual abuse, in violation of 18 U.S.C § 2242(3) (Count Two); sexual abuse of a ward, in violation of 18 U.S.C § 2243(b) (Count Three); and deprivation of rights under color of law, in violation of 18 U.S.C §§ 242 and 250(b)(1) (Count Four). The defendant has notified the government through his counsel that he wishes to plead guilty to the indictment.

**II.  APPLICABLE STATUTE AND ESSENTIAL ELEMENTS OF THE OFFENSE**

**A.  18 U.S.C § 2241(a) (Aggravated Sexual Abuse)**

To establish a violation of 18 U.S.C. § 2241(a), the government must prove the following:

1. The defendant caused the victim to participate in a sexual act defined in 18 U.S.C. § 2246(2);

2. The defendant used force against the victim;

3. The defendant did these acts knowingly; and

4. The offense was committed at the Federal Detention Center in Philadelphia, PA.

*See generally* Pattern Crim. Jury Instr. 11th Cir. 79.1 (2010).

### B. 18 U.S.C § 2242(3) (Sexual Abuse)

To establish a violation of 18 U.S.C. § 2242(3), the government must prove that:

1. The defendant knowingly engaged in a sexual act as defined in 18 U.S.C. § 2246(2) with the victim;

2. The victim did not consent to the sexual act; and

3. The offense was committed at the Federal Detention Center in Philadelphia, PA.

18 U.S.C § 2242(3).

### C. 18 U.S.C § 2243(b) (Sexual Abuse of a Ward)

To establish a violation of 18 U.S.C. § 2243(b), the government must prove that the defendant:

1. The defendant knowingly engaged in a sexual act as defined in 18 U.S.C. § 2246(2) with the victim;

2. At the time, the victim was in official detention at the Federal Detention Center in Philadelphia, PA;

3. At the time, the victim was under the custodial, supervisory or disciplinary authority of the defendant; and

4. The offense was committed at the Federal Detention Center in Philadelphia, PA.

Model Crim. Jury Instr. 9th Cir. 8.176 (2010).

### D. 18 U.S.C § 242 (Deprivation of Rights Under Color of Law)

To establish a violation of 18 U.S.C. § 2243, the government must prove that the defendant:

1. The defendant was acting under color of law;

2. The defendant deprived the victim of her right to be free from cruel and unusual punishment, which is a right secured and protected by the Constitution and laws of the United States; and

3. The defendant acted willfully.

Fed. Crim. Jury Instr. 7th Cir. 242[1] (2023 ed.).

### III. MAXIMUM PENALTIES

    A. **Maximum Penalties**

        a. 18 U.S.C § 2241(a)

A violation of 18 U.S.C § 2241(a) carries a maximum of life imprisonment, a $250,000 fine, a mandatory minimum term of 5 years up to a maximum of lifetime supervised release, and a $100 special assessment.

        b. 18 U.S.C § 2242(3)

A violation of 18 U.S.C § 2242(3) carries a maximum of life imprisonment, a $250,000 fine, a mandatory minimum term of 5 years up to a maximum of lifetime supervised release, and a $100 special assessment.

        c. 18 U.S.C § 2243(b)

A violation of 18 U.S.C § 2243 carries a maximum of 15 years' imprisonment, a $250,000 fine, a mandatory minimum term of 5 years up to a maximum of lifetime supervised release, and a $100 special assessment.

        d. 18 U.S.C § 242/18 U.S.C § 250(b)(1)

A violation of 18 U.S.C §§ 242 and 250(b)(1) carries a maximum of life imprisonment, a $250,000 fine, up to five years of supervised release, and a $100 special assessment.

        e. Total Maximum Sentence

The defendant faces a maximum of life imprisonment, a $1,000,000 fine, a mandatory minimum of five years up to a maximum of lifetime supervised release, and a $400 special assessment.

### IV. FACTUAL BASIS FOR THE PLEA

If this case were to proceed to trial, the government would prove the following facts, among others, through witness testimony and exhibits beyond a reasonable doubt. This

memorandum sets forth only the essential facts that would need to be proved to establish the elements of the offenses charged.

On Saturday, July 6, 2024, Bureau of Prisons ("BOP") inmate ▮ (the victim), assigned to the Federal Detention Center ("FDC") in Philadelphia, Pennsylvania, reported that she had been sexually assaulted hours earlier by a male staff member. At that time, ▮ was housed in the Special Housing Unit ("SHU") of the FDC. ▮, who has a history of mental health issues, was in a psychological observation cell[1] in the SHU due to a recent psychiatric incident.

▮ alleged that in the early hours of July 6, 2024, a male – believed by ▮ to be a staff member – entered ▮'s cell while she was asleep. ▮, who was sleeping on her stomach, reported that she felt the staff member grab her shoulder as he said, "don't say anything." The staff member proceeded to sexually assault ▮ and ejaculated inside of her. ▮ reported that she was able to observe the staff member's hands during the assault and described them as "milk chocolate" in color. After the assault, ▮ pretended to be asleep.

Officials from the FDC confirmed that there were only two corrections officers ("COs") assigned to the SHU during the 10:00 pm to 6:00 am overnight shift July 5-6, 2024 – the night of the assault. One of those two COs was the defendant who is a bald, black male. The other CO, Daulton Hetzer, was confirmed to be a white male with brown hair.

▮ reported the assault at approximately 8:10 am on July 6, 2024 – just over 2 hours after the defendant's shift had concluded and he had departed. She subsequently confirmed that she waited until the defendant left the unit to report the assault. After making the report, ▮ was transported to the Philadelphia Sexual Assault Response Center ("PSARC") for medical evaluation. As part of the evaluation, a consensual rape kit test was conducted on ▮

---

[1] Inmates housed in psychological observation cells are supposed to be subject to more frequent checks by COs.

The PSARC sexual assault forensic examination report indicates that ▇ said that she was sexually assaulted on July 6, 2024, while in her cell at the FDC, between the hours of 12:30 am and 6:00 am. The report further states that ▇ alleged her clothes were pushed down and she was penetrated by a penis vaginally for approximately fifteen minutes. The report indicates that ▇ alleged her assailant ejaculated in her vagina, on her clothing, and on her body surface. She also reported that her assailant attempted to penetrate her anus. According to the report, ▇ said that her assailant "was behind me" and that at "first I can see his head, then he switched to a hoodie." The report further states that ▇. described her assailant as a black, "bald-headed" male. During a subsequent interview by the case agent on November 20, 2024, ▇ confirmed that she was not able to see the staff member's face during the assault. Finally, the PSARC report indicated that ▇ had reddened areas on her left arm and shoulder, left thigh, and back/left buttocks, as well as vaginal tenderness and blood in her cervix. Thes injuries were documented via photograph.

Later in the day on July 6, 2024, at approximately 6:34 pm after ▇ had returned to the FDC, she made a recorded phone call to a female acquaintance. On the call, ▇ said that an officer entered her cell overnight. She further insinuated that something happened to her while the officer was in her cell. ▇ sounded extremely upset during the phone call.

As part of the investigation, agents interviewed the other guard on duty, CO Hetzer, who confirmed that he did not observe the assault. He stated that he and Jefferson split up the shift, and that he was in an office that did not have a view of the victim's cell and listening to music during the time of the assault. He also stated that the only other person of which he was aware to enter the SHU that evening was a lieutenant. Written records confirmed that the lieutenant entered, conducted his rounds, and left during CO Hetzer's portion of the shift. The records did

not show anyone entering the SHU during the defendant's portion of the shift.

Notably, a special log, the Psychology Observation Log Book, was required to be kept for ▮ because she was in a psychological observation cell. The defendant logged an entry every half hour from 2:00 am to 5:30 am on his purported observations of ▮, and each time he indicated that she "[a]ppears to be asleep." The defendant signed his initials by every entry.

On September 24, 2024, the Department of Justice – Office of the Inspector General ("DOJ-OIG") reported to the Philadelphia Police Department's Special Victims Unit to take custody of evidence related to ▮ This evidence included DNA collected from the rape kit test and clothing worn by ▮ the morning after the alleged sexual assault. The evidence was shipped to the Federal Bureau of Investigation ("FBI") Forensic Laboratory in Quantico, Virginia – the laboratory provider for DOJ-OIG.

On January 2, 2025, DOJ-OIG received a completed analysis from the FBI Forensic Laboratory. The FBI report, dated December 13, 2024, indicates that the DNA collected from ▮ on July 6, 2024, contained both male and female DNA. Specifically, the FBI report stated there was male semen identified in the vaginal, vulva, cervix, rectal, and perianal swabs which were all collected from ▮ Subsequently, a voluntary DNA sample was obtained from the defendant.

On February 11, 2025, we received the results of the comparison between the DNA swabs taken from ▮ and the defendant. The lab separately analyzed the comparison of the DNA samples from (1) vaginal and cervical swabs, (2) vulva swabs, (3) rectal swabs, and (4) perianal swabs taken from ▮ against the defendant's buccal swab. The "likelihood of inclusion" indicates how much more likely it is that the defendant was the contributor of the

male DNA obtained from the rape kit swabs than if an unknown, unrelated person is a contributor. The laboratory made the following determinations:

| Swab | Likelihood that the Defendant was the Contributor of the DNA than Another, Unknown Male | Likelihood Ratio | Level of Support[2] |
|---|---|---|---|
| Vagina and Cervix | 1.0 nonillion times more likely | $1.0 \times 10^{30}$ (1.0 nonillion) | Very Strong Support for Inclusion |
| Vulva | 860 octillion times more likely | $8.6 \times 10^{29}$ (860 octillion) | Very Strong Support for Inclusion |
| Rectum | 1.2 nonillion times more | $1.2 \times 10^{30}$ (1.2 nonillion) | Very Strong Support for Inclusion |
| Perianal | 1.1 nonillion times more likely | $1.1 \times 10^{30}$ (1.1 nonillion) | Very Strong Support for Inclusion |

If called to testify, a DNA analyst would explain that the likelihood that the defendant was the contributor of the DNA from ███'s rape kit swabs is extremely high. In other words, the tests did not just identify the defendant as likely being included. Rather, each of the four tests identified him as likely being included using the highest level of support possible.

## V.    PLEA AGREEMENT

The parties have executed a plea agreement, that will be presented to the Court during a hearing regarding entry of the guilty plea. The agreement includes a supplement to be filed under seal.

---

[2] These likelihood ratio ranges provide the following support for the conclusion:
Likelihood Ratios: Qualitative Equivalent:
≥1,000,000 **Very Strong** Support for **Inclusion**
10,000 to <1,000,000 **Strong** Support for **Inclusion**
100 to <10,000 **Moderat**e Support for **Inclusion**
2 to <100 **Limited** Support for **Inclusion**
1 Uninformative
>1/100 to 1/2 **Limited** Support for **Exclusion**
≤1/100 **Exclusion**

- 8 -

## VI. CONCLUSION

The government requests that the Court conduct a hearing under Federal Rule of Criminal Procedure 11 and if warranted then accept the defendant's plea of guilty.

Respectfully submitted,

DAVID METCALF
United States Attorney


 /s Meghan Claiborne Bisio
MEGHAN CLAIBORNE BISIO
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that this Change of Plea Memorandum has been served by email on:

    Lonny Fish, Esq.
    lonny@libertylawteam.com
    Attorney for defendant, Michael Jefferson


                              */s Meghan Claiborne Bisio*
                              MEGHAN CLAIBORNE BISIO
                              Assistant United States Attorney


DATED:  December 18, 2025.